## Case No. 2,925.

### COBB v. HOWARD et al.

[10 N. Y. Leg. Obs. 353.]

District Court, S. D. New York. April 30, 1852.[1]

ADMIRALTY— BREACH OF CONTRACT OF PASSAGE— SUIT BY ASSIGNEE OF PASSENGERS—JOINDER OF DEMANDS—PLEADING AND PROOF.

1. The assignee of a maritime contract, not negotiable, may sue upon it in admiralty in his own name; and may unite in one action several demands against the same defendant, although derived from different assignees.

2. A ticket issued by a ship owner, acknowledging the receipt of money for a passage in the ship, imports an engagement on his part to give the conveyance, and on failure to furnish it to the person paying the money, an action will lie for recovering it back in the name of his assignee.

3. Such contract made in New York, to convey a passenger in a specified steamship from Panama to San Francisco, in the month of April, is broken if the ship fails to arrive at Panama during that month.

4. The owner has the entire month within which to perform the undertaking; but an offer to furnish the passage in a different ship is not a satisfaction of the contract.

5. If the steamship does not arrive at that port until after the month of April, the passage money is recoverable, although the passenger did not wait in Panama the expiration of the month, but shipped therefrom on the 3d of April.

6. Neither party can give proofs against or out of the allegations of the pleadings.

7. Formal amendments may be allowed at any stage of a cause.

[In admiralty. Libel by William Cobb against John T. Howard and others for breach of a passenger contract.]

---

[1] [Affirmed in Case No. 2,924.]

BETTS, District Judge. The important traffic in the transportation of passengers, by steamships between New York and California, from its great extent and the numerous complications attending its execution, will doubtless present interesting questions for adjustment by the courts of law..

The defendants established a line of steamers in that trade, composed of vessels plying on this side of the continent, between New York and Chagres, and on the other, between Panama and California, designed to be so arranged that passengers arriving by either route would find a ship ready to receive and transport them to their destination on the other; and accordingly passages could be secured and the passage money paid at either place of departure for the entire water route between New York and San Francisco, the same as if not interrupted by any transhipment and land conveyance; or passages and berths might be secured at either place on board a particular ship from the Peninsula, without regard to the manner in which the passengers arrived at her place of departure. The defendants prepared an additional steamship, the New Orleans, which was to be added to their line, and to leave New York for San Francisco in February, 1850. She was to commence her trips at Panama and depart from that place in April thereafter with passengers to San Francisco. Tickets for passages and berths on board the New Orleans from Panama to San Francisco were sold in New York to a large amount. In January and February, 1850, the fourteen tickets mentioned in the pleadings, and produced by the libellant as the foundation of his demand in this case, were thus purchased here by individuals, and the sums of money specified in them respectively, were at the time paid to the defendants by the purchasers.

The tickets were printed forms, uniform in substance, having blanks filled in with writing to meet the facts of each particular case. The printed part was as follows:

First Cabin Ticket. Pacific Steamship New Orleans. J. Howard and Sons, Agents, 34 Broadway.

No. ——— Voyage ——— New York, ———
Received ——— dollars for the passage of ——— in the steamship New Orleans, from ——— in the month of ——— to the anchorage of ——— (Signed) J. Howard & Son.
State room ———        J. W. Corrington.
Berth ———

The first cabin ticket, filled up, reads:

No. 11 (printed reading as above). Voyage 1.
New York, Feb. 11, 1850.
Received three hundred dollars for the passage of Mr. Kraft, in the steamship New Orleans, from Panama, in the month of April, to the anchorage of San Francisco.
State room 3.        (Signed as above.)
Berth S.

The second cabin tickets varied from that only in heading, "second cabin ticket," and in the amount of cash received, being $150 in each case, instead of $300.

The evidence is not direct and positive that each ticket was paid for by and delivered to the person whose name is written in it, but is sufficient to raise a satisfactory presumption that such was the fact, and that the purchaser proceeded with it to Panama, and was at that place, on the first day of April, to have advantage of the passage secured him by the ticket. The steamer New Orleans not being at Panama, ten of the persons named in the second cabin tickets took passage on the first day of April on board the bark Anna, owned by the libellant and commanded by Charles T. Robinson, and sailed in her for San Francisco on the third of April. Each of these persons paid for his passage with the ticket he had received from the defendants, which was accepted by Lane, the agent of the bark, at the valuation of $160, in full, for the passage money to San Francisco, to which place the passengers were transported by the vessel. These tickets were assigned by Lane to the libellant, in writing, on the 6th of August thereafter.

It is proved that tickets issued in New York for the same voyage on board the New Orleans, were sold in Panama to a large amount,—about $51,000,—and such sales were publicly made with the knowledge and approval of Folger, who was then there acting as general agent of the defendants in the business of their steamships, and that they were purchased and received in that market as evidence of money payable by the defendants to the holders. This evidence was objected to on the part of the defendants. The defendants had notice from their agent, Folger, by letter dated August 6, 1850, at Panama, that Mr. Lane was owner of the fourteen tickets now in question, and that the agent had promised him they would be redeemed in New York if sent there. This testimony was also objected to by the defendants. The defendants proved they had disavowed to Folger and repudiated his acts or declarations in relation to their responsibility for the tickets purchased at Panama. This evidence was objected to on the part of the libellant. The other two second cabin tickets and the two first cabin tickets were purchased in Panama by Lane, the agent of the bark; the consideration paid for them or the time of their purchase was not proved. They were bought of Garretson & Fritz, brokers at Panama. No direct transfer of the tickets by the passengers in writing was produced, and except in respect to ten given to the agent of the bark in payment for their passages by the persons named in them, is there any evidence who acquired the tickets from the persons to whom they were originally delivered.

The libellant places his right to a recovery upon the ground that the respondents having received the money specified in the tickets upon the promise to carry the persons paying it in the steamship New Orleans from Panama to San Francisco, they are responsible to those persons for the amount paid, having

failed performing the contract upon which the money was paid. That the whole amount is in their hands, money had and received by them for the use of the persons respectively who advanced it, and that the libellant, as the lawful owner of the certificates acknowledging the receipt of the money, is substituted in their places and rights and is entitled to recover it in this court in his own name.

The defence to the action is placed upon various points, some of them purely technical, and others contesting the legal liability of the defendants to any party or in any form of action under the facts of the case; for it is insisted that if the persons to whom the certificates or tickets were issued had sued for the recovery of the money advanced, there is no breach of the contract between them and the defendants proved in the case upon which a recovery could be founded. This position, I apprehend, would not be found tenable. The receipt given on payment of the passage price to the defendants necessarily imports an engagement on their part for that consideration to supply the persons paying the money a passage in the steamship New Orleans from Panama to San Francisco, in the month of April, 1850, and the use of a particular berth on board her. A refusal or omission to furnish either would be a breach of the agreement by the defendants, and they would thereby render themselves answerable to the person they contracted with for the consideration money advanced, if not for consequential damages. A contract to transport passengers by sea binds the owner and ship, and in case of its violation in any important particular, the party with whom it is made may recover back his passage money advanced, without offering to go in the ship, although she performs the voyage agreed for. The Pacific [Case No. 10,643].

The contract in this case was entered into at New York and the money was paid there, but on the part of the defendants it was executory, to be entered upon at Panama in the month of April thereafter, by taking the persons contracted with, on board the ship New Orleans and transporting them thence to San Francisco. I think upon the terms of the engagement the defendants had the entire month of April within which to enter upon the execution of the contract. If their ship was at Panama, ready to fulfil the undertaking at any time during that month, they would have complied with their engagement, and would be no way answerable to the passengers who failed to be there to accept such performance. I do not accede to the construction put upon the contract by the libellants' counsel, that the agreement as to time was for the April trip, intending thereby its commencement at Panama on the first day of April, subject only to temporary and unavoidable delays. The ship had to make her voyage from New York to Panama,

and although she entered upon it on the 25th day of February, yet obviously it was contemplated between the parties she might not fulfil the expectation that she would reach Panama by the first of April, and to avoid all controversy in respect to her punctual arrival the stipulation was made to embrace the entire month. The passengers left New York for Panama between the 15th of March and the first of April, and as the ship had left this port on the 25th day of February preceding, and as appears upon the pleadings, had been disabled and compelled to put into St. Thomas for repairs, it is no more than a reasonable presumption that those facts were known at Panama on the first of April. The conduct of the agent of the defendants at that place clearly indicates that the condition of the ship was notorious, and that it was then well known she would be unable to reach that port within the month. She did not arrive there until the 23d of August thereafter. The agent took no steps in regard to the passengers; tickets which were bought by them to Panama for that ship were sold to an amount exceeding $50,000, and the evidence is that the agent was cognizant of those facts, and although when applied to he refused to refund the money to the holders, because he was not supplied with means to do it, yet gave assurance that they would undoubtedly be redeemed in New York by the defendants if sent there.

Without entering into enlarged comments upon this branch of the case, I think the true interpretation of the transaction is, that the ship owners would be acquitted of their obligation if they had the ship at Panama ready to perform their contract at any time during the month of April. But it is manifest that the holder of a ticket was entitled to be conveyed in that ship, and could compel the owners to refund the passage money paid them on failure to furnish the passage agreed for in the ship New Orleans. The offer to furnish a passage in another competent and safe vessel might, in this court as in equity, acquit them of responsibility in damages for failing to supply the particular conveyance contracted for, especially if proved that the defendants were prevented meeting their engagement by other causes than their own refusal or negligence, but it would not authorize them to retain the money advanced and insist on transporting the passenger in a different manner. This principle is plainly covered by the decision in the case of The Pacific [supra]. The passengers had a right to abandon the voyage and demand and recover back their passage money, on the failure of the ship owners to furnish them the passage contracted for. It might be different had they entered upon the voyage on board the ship and she had become disabled during its progress. In that case the rule in respect to cargo might apply, and the ship owners be entitled to retain the

money advanced on offering to transport the passengers in another vessel to their place of destination, and so also the reciprocal obligation on the owners might have arisen to forward the passengers at any expense.

The objection was raised by the answer and strenuously insisted on in the argument for the defendants, that this action could not be maintained in the name of the libellant, for two causes; first, that his demand rested upon choses in action and not upon any negotiable securities, and if the defendants are under any liability it is one personal to the parties taking the passage, and is not transferable to a third person; and secondly, if a debt accrues from the transaction to the passengers which is assignable, it is separate and distinct to each passenger, and the various demands when severally assigned cannot be united and compose one debt suable as an entirety by the assignee; and that the assignee in neither case can set up any title to the debt but by means of a written assignment. These exceptions resolve themselves into two heads—the form of the action and the sufficiency of the proof offered to support it. Under the first, the point is taken, that no right can be acquired to a chose in action by a third party without a formal written assignment transferring it; and that if legally transferred, an action upon it can be maintained only in the name of the obligee and assignor. In admiralty a party sues upon the right vested in him, and no distinction in the form of action is made between liabilities incurred directly to the libellant and those which came to him by assignment or succession, having been the property of others. The real parties in interest are the nominal ones in the proceedings. This is substantially so in equity. Story, Eq. Pl. § 153, note 1, p. 189. The action, then, is properly in the name of the party who owns the claim, and there is no necessity of distinct actions to enforce against the same party claims acquired from different sources, any more because the debts were originally created to different parties from whom they vest in the libellant, than if they had been incurred directly to the libellant, but upon diverse and independent considerations. The indebtment has become single, both in respect to the party demanding its payment and the one sought to be charged with it. Under such circumstances, the courts would compel a consolidation of the actions, had suit been brought upon each separate debt.

The other objection presents the point only, as to what is adequate proof of the transfer of a chose in action. The common and perhaps the simpler method is to make a written assignment; yet in principle no additional right is created by the assignment in writing. In some instances it may furnish a more easy and satisfactory mode of proof, whilst in others, it will impose embarrassing difficulties in the way of establishing the fact that an assignment was made. In this case the testimony is explicit, that ten of these tickets were transferred to the libellant by delivery to his agent or the captain of his vessel, by whom they were received as cash, each for the sum of $160, and the person owning and so delivering the ticket was, in consideration of that assignment, transported in the libellant's vessel from Panama to San Francisco. Each of those tickets was evidence of a debt of $150. The sufficiency of the consideration and its actual receipt by the person to whom the ticket was issued and who transferred it to the libellant's agent is thus proved beyond question. This point has been considered and directly decided in the state of Maine. The court held that a chose in action may be assigned for a valuable consideration by the delivery of the evidence of the debt, without any written transfer. Littlefield v. Smith, 5 Shep. [17 Me.] 327; Spafford v. Page, 15 Vt. 490. A mere delivery to another by the creditor of the evidence of debt due him by a third party, without explanatory proof, might be held to import no more than an authority to collect the debt for the benefit of the creditor; but in respect to the ten specified certificates, they thus became the absolute property of the libellant, and he is entitled to recover the debt acknowledged by them, by action in his own name. There is no evidence proving that the remaining four tickets (one to Kraft for $300, one to Fox for $300, one to Kloppensteen for $150, and one to Bessara for $150) were sold by those parties or transferred by them to the libellant, or to Garrison & Fritz, or Lane, his agents, or any other person acting for him, nor that any consideration was ever paid by the libellant for them. That he did so is inferred only from the fact, that he has them in his possession and received them from his said agents. No evidence is given that any consideration was paid for them to the original owners of those debts. The naked possession of those papers does not, accordingly amount to evidence of a legal ownership of the debts acknowledged by them, and those portions of the libellant's demand must be rejected.

It is insisted, both in the oral argument and the written brief submitted by the counsel for the responuents, that no recovery can be had upon the evidence before the court, because it does not conform to and support the libel, and also because of itself it fixes no responsibility on the respondents to the assignors of those tickets. It is a fundamental principle with courts proceeding according to the course of the civil law, that no remedy or defence can be accorded parties litigant out of their pleadings. Things not specifically alleged may be sometimes implied, and a decree be rendered according to the right, when that right is not specifically asserted in the pleadings; but if the proofs conflict with the allegations by setting up a

different case, or show that whatever may be the right or equity of the party it is not as represented in the pleadings, then no decree can be had upon such proofs, and the rule, become nearly an axiom in this respect, that the decision will be secundum allegata et probata, takes effect in its full force. Nangatuck Nav. Co. v. The Rhode Island [Case No. 11,745].

On examining the libel · critically it would seem to have been drawn up in a very hurried manner, or to have been copied most carelessly, as the language employed in some of the allegations is palpably opposed to the meaning intended to have been expressed, and in one instance, at least, renders the fact stated as the foundation of the claim wholly nugatory. For instance, in some articles it is averred that the defendants agreed to furnish the passenger named with two cabin passages in the ship New Orleans; in one it is asserted that the libellant made the engagement to furnish the passage, and in all the articles it is asserted that the respondents agreed to carry the baggage of the passenger; sometimes it is said in the ship, and in others in the cabin, and in several instances the agreement charged is, to furnish the passenger "with two cabin passages for himself and baggage," expressions well bearing the construction that the respondents were to furnish distinct or double accommodations in the cabin to such passengers. It is averred that all the contracts were in writing, and then it is asserted, "that of said persons above mentioned, or either of them respectively, were not at Panama when the vessel should sail as advertised, he who was absent should forfeit half the amount paid." The breaches of the contract are stated to be that, "putting faith and confidence in the said undertaking of the respondents, and impelled by the named forfeiture, the several libellants left the city of New York and arrived at Panama so as to meet the said steamship, which was to convey, in the month of April, to San Francisco, but though they arrived there before the time appointed, and remained there until long after the time appointed for the sailing of said steamer from Panama, and long after the time they were to be furnished with a passage as above stated, the said steamship New Orleans did not come there, nor did the respondents furnish the several persons above named with a passage on board said steamship, or any other steamer." The libel then avers, that the agent of the respondents at Panama not being able to send said persons by the steamship New Orleans or otherwise on his own account, applied to the libellant to furnish them passages to San Francisco and take therefor from them the said contracts, and that the respondents would, in consideration thereof, pay said claim to the libellant, and that the libellant in pursuance thereof did furnish said passages and took therefor the claims of said

persons against the respondents. Yet the article containing this statement does not connect with it any averment or charge that the respondents failed to fulfil the agreement, and is therefor nugatory as a pleading; but the next article in the libel makes an independent charge, that the libellant, at the request of the respondents, furnished such passages and took in satisfaction thereof these claims on the respondents, and holds their contract, and has frequently demanded payment thereof which they neglect and refuse to make to him and if the proofs comport with these averments, it is sufficient to support the action without the aid of the antecedent allegation. The answer admits the issuing of all the tickets except one to Mr. Kraft, it denies that the respondents or their agent applied to the libellant to transport the passengers claimed from Panama to San Francisco, or to take the said contracts or claims in satisfaction of such passages, or that their agent or any one for them agreed to pay said claims to the libellant; and also denies all knowledge that the passengers were carried by the libellant on the terms stated in the libel.

The answer admits that the steamship New Orleans left New York the 25th of February, 1850, and did not arrive at Panama until the 23d of August thereafter, but asserts she was then ready and prepared to take said passengers to San Francisco. The answer further takes exception to the sufficiency of the libel as to certainty in respect to the grounds of this action or the items and particularly of the libellant's account, and as to the time and manner and under what circumstances the libellant became owner of the claims of said passengers, or what those claims were. The blunders in the libel in making the libellant engage to furnish the passage in the New Orleans; in averring that passengers were to have two cabins, and using "of" for "if" in article four, are not calculated to mislead the respondents in any respect, as the meaning of the libel is obvious, and therefore, according to the rules of practice in admiralty courts, the mistakes may be amended at any stage of the cause. Ben. Adm. §§ 358, 483. The same principle applies to a good extent to amendments in matters of substance. Id. But if the amendments allowed are of a character to change essentially the ground or mode of defence, the party receiving the favor will be put under equitable conditions towards the other. Upon these principles, the third article of the libel would, on the motion of the libellant, be amended by order of the court, so that the promise alleged to be made by the libellant to Abel Hall should be stated to be made by the respondents, and that wherever the term "two cabin passage" occurs in the 4th article of the libel, the same be amended to read "second cabin passage," and that the particle "of" said "persons," in the last paragraph of the same article, be

amended by substituting "if," and also in the next article of the libel (likewise numbered "fourth"), the statement "the several libellants left," be amended to read "the said several persons left," and after the word "convey," in the same article, to insert "them." These errors are clearly clerical mistakes, and are so palpable as not to be calculated to mislead any one as to the meaning of the libel, and it would be entirely contrary to the usage of the court to turn the libellant round, or subject him to any delay on their account. Betts, Adm. p. 57; Sup. Ct. Rule 24. In disposing of the cause I shall reserve the right to the libellant to move those amendments of course, at any time before the final decree is entered. Various other particulars in the libel, objected to by the respondents as defective pleading, fall more appropriately under the class of variations of proofs from the allegations; such as the averments that all the contract was in writing; that the respondents engaged to transport the baggage of the passengers; that the passenger absent from Panama, when the steamer arrived there, should forfeit half the amount he had paid, etc., etc.

Upon the merits of the case, when the errors before specified, shall be amended, and considering the action to be the same as if prosecuted in the name of each passenger, the questions are whether the libellant claims upon the contract actually made by the parties, and whether he offers competent and sufficient proof in support of the action. The libellant may rightfully charge the contract according to its legal import, and he is not confined to stating it in the words of the written paper. It will then be for the court to determine whether his evidence sustains the agreement he counts upon. It is plain enough that an acknowledgment, in writing, by one party of the receipt of a sum of money from another for a consideration, to be afterwards rendered by the one receiving it, raises the implication of a promise to perform the condition on which the money was advanced, and in case of failure so to do, furnishes the promisee a right of action to be recompensed in damages for the breach, at least to the amount of the money paid, or to recover it back on suit for that object. The libellant, as the transferee of the claims of persons who paid the money, is clothed with their rights in this respect, and if the contract set up in the libel was no other than such implied one, there would be nothing in the way of his recovering those sums of money with interest, all demand of damages beyond that being disclaimed on the trial. It is, however, objected to his recovery in this case, that he has laid the contract in his libel, as containing the double engagement to transport the persons paying the money and also their baggage in the ship, and alleged the contract to be in writing, and that he cannot recover upon these allegations without proving the contract thus set forth. There is no evidence in the case, direct or implied, that the respondents engaged to transport the baggage of the passengers with the persons for the consideration paid. This might, probably, be presumed had any evidence been given that such was the usage of the trade, but the court cannot infer, as matter of law, that the passenger acquired by the contract he produces, anything beyond the right of a personal passage. But this objection, it appears to me, does not exclude the evidence offered nor prevent its availing the libellant so far as it is pertinent to the case.

It is to be observed that no specific issue is taken upon the averment of the form or contents of the contract. The answer puts in a general denial. This necessarily imposes on the libellant the obligation of supporting the averment in all its material parts, and charging that the contract included undertakings not proved to be embraced by it, does not necessarily prevent the libellant having the advantage of those which do exist. It might be otherwise if the action was by the respondents, for the carriage, and they averred they had carried the passenger and his baggage and only proved the carriage of the person, for the proof of part performance only would admit that the party had done less than he agreed to do, and might disable him from maintaining an action upon such imperfect execution of his agreement. But an averment that the defendants agreed to do two things by written contract, and when the contract is produced, it is found that only one was agreed to be done, does not destroy the right of the promisee to the performance of the actual contract. If the difference makes to the advantage of the respondents in any way, it is only in this, that the variance is of a character to estop the libellant making claim under the contract set up in the libel. It does not appear to me that this variance affects the merits of the case. The libellant proves the payment of the passage money and the promise of the defendants to supply the passage as averred, and that they have not fulfilled such agreement, but he fails to prove any further or additional undertaking on their part. The allegation of such other agreement may well be treated as mere surplusage on these pleadings, because if the respondents had proved a performance of the other part, or a satisfaction of the agreement, or any legal defence to it, manifestly the libellant could not maintain an action for not carrying the baggage. No engagement to do it is proved, but if the obligation may be regarded as incident to the undertaking to transport the person, it would be merged in and fall with the principal agreement when that should be defeated.

Upon the whole the right of the case appears to me to be clearly with the libellant as to the ten tickets given him by the passengers themselves, and for which he fur-

nished them passages on board his ship from Panama to San Francisco, and I shall decree that he recover against the respondents the monies they received from those tickets amounting to $1,500, with interest on each from the time the money was paid them therefor, and costs of suit. The claim of the libellant as to the remaining four tickets, amounting to $900 and interest, is dismissed, but without prejudice to his suing and recovering for the same hereafter, on competent proof that they were acquired by him bona fide from or through the original owners. Order accordingly.

[NOTE. The respondents appealed to the circuit court, which affirmed the decree herein. Case No. 2,924, next preceding.]

COBB (HOWARD v.). See Cases Nos. 6,755 and 6,756.

COBB (HOWE v.). See Case No. 6,767.

COBB (McCLOSKEY v.). See Case No. 8,-702.

COBB (UNITED STATES v.). See Case No. 14,820.

COBIN (OWSLEY v.). See Case No. 10,636.